# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>QUALCOMM INC.; QUALCOMM TECHNOLOGIES, INC.,<br><br>　　　　Defendants. | Case No. 7:24-cv-00231-ADA |

**STIPULATION GOVERNING ELECTRONIC AND HARD COPY DISCOVERY**

The Plaintiff Redstone Logics LLC and Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc., subject to the Court's approval, hereby agree as follows:

**I.    PURPOSE**

　　1.    Purpose and Scope.  This Order shall apply to all discovery of electronically stored information ("ESI") and hard copy documents in this action.  Nothing in this protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules, to rely on any protective order entered in this action concerning the protection of confidential or otherwise sensitive information, or to object to the authenticity or admissibility of any ESI or hard copy document produced in accordance with this protocol.  The procedures and protocols set forth in this Order are intended to streamline the exchange of ESI and hard copy documents to promote a "just, speedy, and inexpensive determination" of this action as required by Federal Rule of Civil Procedure 1.

**II.    COOPERATION**

　　2.    Disputes.  The Parties are aware of the importance the Court places on cooperation and they commit to cooperate in good faith throughout the matter consistent with any court guidelines for the discovery of ESI and hard copy documents.  The Parties shall meet and confer in good faith on any issue regarding the production of ESI or hard copy documents, as necessary, that arise under this Order or otherwise.  In the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the matter to the Court.

**III.    PROPORTIONALITY AND COST CONTAINMENT**

　　3.    Reasonable Discovery Limits.  Pursuant to Federal Rule of Civil Procedure 26(b)(1), the Parties shall cooperate to achieve proportionality in discovery and are expected to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant

1

information (both electronic and hard copy). This includes identifying appropriate limits to discovery, including phased discovery, limits on the number of custodians, on discoverable data sources, on time periods for discovery, and other parameters to limit and guide preservation and discovery. Requests for production and corresponding responses shall be reasonably targeted, clear, and as specific as practicable in compliance with Federal Rule of Civil Procedure 34(b)(1)(A).

4. <u>Types of ESI That Need Not Be Preserved or Searched</u>. The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a) Except on a showing of good cause, there is no need to preserve, collect, or produce ESI from the sources listed in **Attachment A**, which are hereby deemed to not likely contain relevant information and to be not reasonably accessible.

5. <u>No Designation of Discovery Requests</u>. Productions of ESI and hardcopy documents in the reasonably usable form set out in this protocol need not be organized and labeled to correspond to the categories in document requests.

## IV. **PRODUCTION**

6. <u>De-Duplication of Production</u>

(a) <u>General</u>. The Parties shall use reasonable, good faith efforts to avoid the production of "Duplicate ESI." "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values.

(b) <u>Global Deduplication</u>. The Producing Party shall take reasonable steps to de-duplicate ESI on a family level globally (i.e., both within a particular custodian's files and across all custodians, to the extent a Party seeks and obtains leave of Court to propound custodial production requests).[1]

(c) <u>Identical MD5Hash</u>. To permit deduplication, hash values (MD5Hash) must be identical. Deduplication shall not break apart families and shall be performed at a family level.

(d) <u>Email Threading</u>. To the extent a Party seeks and obtains leave of Court to propound custodial production requests, the Producing Party may use email threading tools to identify and exclude lesser-included components of longer e-mail threads. This stipulation does not alter the Court's restrictions on email discovery as provided in the Court's OGP 4.4 §III.

(e) <u>Single Production Copy</u>. When exact duplicate standalone documents or families exist, the Producing Party need only produce a single copy of a responsive

---

[1] There may be non-custodial data sources that cannot be globally deduped or for which global deduplication is not appropriate.

document or family ("Single Production Copy"). The Single Production Copy shall be produced with the metadata set forth in Attachment B.

(f) <u>No Manual Review</u>. No Party shall be required to identify and/or eliminate electronic duplicates by manual review or some method other than by use of the technical comparison using MD5 or SHA-1 hash values outlined above.

7. <u>Production Format for Hard Copy Documents</u>

(a) <u>Production</u>. Hard Copy Documents shall be produced as static images in the following format: black-and-white, single page, 300 DPI, Group IV* .TIFF images. The production should include standard load files, which can be used with commercially available litigation software packages, and which contain the Default Production Fields described in Attachment B. Hard copy color paper documents will be produced in grayscale in TIFF format. The Parties will accommodate reasonable requests for production of specific images in color to the extent available. Producing Paper Documents in such form does not change their character from Paper Documents into ESI.

(b) <u>OCR</u>. For scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

(c) <u>Unitization</u>. In scanning hard copy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records. If a document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party and should be reflected in proper coding of the family fields set out in Attachment B. Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents like staples, clips and binder inserts) or logical unitization (i.e., a manual review of the paper to determine what logically constitutes a document like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data load file or otherwise electronically tracked if reasonably possible. The Producing Party should scan and produce folders, redwelds, binder-covers and other organizational structure. Such materials should be produced as independent documents and be produced before the documents that were contained in these elements to the extent reasonably accomplishable by the above-addressed unitization, (e.g., the file folder should have a Production number immediately before the documents contained in the file folder). The Producing Party will provide the name of the custodian who had possession of the document when it was collected. A custodian can consist of the name of an employee or other person, a department, or an archive storage location.

3

8. ESI Production Format

   (a)   General.  The Parties shall produce ESI in reasonably usable form as set forth herein.  The following provisions shall generally govern the production format and procedure for ESI and are subject to the other provisions contained herein.

   (b)   Production of ESI.  All responsive ESI except that which is produced in Native Format pursuant to Paragraph 18 should be produced as black-and-white, single page, 300 DPI, Group IV* .TIFF images with corresponding extracted full text or OCR and affiliated metadata as identified in Attachment B.  All productions will include these additional specifications:

   (1)   a load file for images and delimited load files (.dat, .dii, .lfp and .opt) containing a field with the full path and filename to native files produced and the metadata fields identified in Attachment B;

   (2)   document-level .txt files.  The .txt file shall contain the extracted full text of the original document if available.  OCR text shall be provided instead if extracted text is not available or if the document has been redacted;

   (3)   production number branding and Confidentiality designation (if any) on the face of the image;

   (4)   all hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) will be expanded, extracted, and rendered in the TIFF file; this specifically includes, but is not limited to, the inclusion of: any notes or comments contained within any PowerPoint slides/presentations; any tracked changes, comments, and hidden text contained within Word Processing files; and hidden rows, columns, and worksheets contained within Spreadsheet or Worksheet Files; and

   (5)   each of the Metadata and coding fields set forth in Attachment B that are contained in or associated with a Document shall be produced.

   (6)   the Parties are not obligated to populate manually any of the fields in Attachment B if such fields cannot be reasonably extracted from a Document, with the exception of Default Production Fields that are generated in the course of collection, review, and production.

9. Production of Native Format ESI.

   (a)   Responsive spreadsheets (e.g., Excel, Lotus, Google Sheets, etc.) and any responsive audio/video multimedia files shall be produced in Native Format.  A TIFF placeholder endorsed with the corresponding confidentiality designation and Production number shall be produced for all ESI produced in Native Format.  To the extent feasible, spreadsheets that require redaction shall be redacted natively and produced in Native Format along with the original file metadata as set forth in

Paragraph 17 and text re-extracted after redaction. Native files requiring redaction may also be produced as TIFF images with OCR Text Files in lieu of a native file. Nothing in this protocol shall limit a Party's ability to elect to produce other forms of responsive ESI in Native Format.

(b)     Extracted Text taken from native files will be provided at a document level. There will be one text file per document, using the same name as the beginning Production number (Document ID) of the document. The extracted text file for a document will reside in a separate folder from the images for that document. The text file associated with any redacted document will exclude redacted text (i.e., the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

(c)     A Party seeking to use a document produced in Native Format in this proceeding (e.g. as an attachment to a pleading, deposition exhibit, etc.) shall:

(1)     image the native file to TIFF image or PDF file in accordance with the specifications in Paragraph 17;

(2)     include in the margin or footer of each page of the TIFF image or PDF file (a) the original production number of the native file, (b) the full confidentiality designation required by the Protective Order, and (c) the text, "file produced natively;"

(3)     prepend to the TIFF image or PDF file the associated slipsheet included with the initial production of the native file; and

(4)     print the required hardcopy from the resulting TIFF image or PDF file.

10. <u>Request for Documents in Native Format</u>. If a Party reasonably concludes that production in Native Format of any document(s) initially produced in TIFF format is necessary (*e.g.*, to decipher the complete meaning, context, or content, to determine if there is any relevant "hidden text" in the document, to determine if there is any important use of color in the document, etc.), such Party may request production of the original document in Native Format. The Parties will accommodate reasonable and proportional requests made in good faith with respect to any such request.

11. <u>Embedded Objects</u>. The Parties will not review or produce embedded documents outside the document in which the file is embedded (e.g., .vcf files embedded in emails, .xlsx files embedded in PowerPoint presentations). The Parties will accommodate reasonable and proportional requests made in good faith for the production of embedded objects on a case by case basis.

12. <u>Corrupt or Inaccessible Files</u>. Certain files may be inaccessible due to password protection, corruption, or unreadable document formats. If reasonable efforts to obtain useful TIFF images or accessible native versions of these files are unsuccessful, such documents may be withheld.

13. Appearance and Content.  Each Document's TIFF image file shall contain the same information and the same physical representation as the original, except as necessary to redact privileged or otherwise protected information or otherwise comply with this Order (*e.g.*, necessary to expand and render hidden text as provided in Paragraph 17).  If a produced document presents imaging or formatting problems that the Producing Party was not able to resolve at the time of production, the Receiving Party, upon discovery, may request a replacement copy from the Producing Party of the problematic document.  The Parties will accommodate reasonable and proportional requests made in good faith with respect to any such request.

14. Color.  The Parties will accommodate reasonable and proportional requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the documents on a case by case basis.

15. Load File.  Unless otherwise agreed, each production shall include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

16. Document Numbering for TIFF Images.  Each page of a document produced as a TIFF image shall have a legible, unique Document Production Number (sometimes referred to as a Bates Number) electronically "burned" onto the image on the lower right corner in a manner that does not obliterate, conceal or interfere with any information from the source document.

    (a) The Production number shall be a unique, consistently formatted identifier and:

        (1) be consistent across the production;

        (2) contain no special characters;

        (3) be numerically sequential within a given file;

        (4) be a combination of an alpha prefix that identities the Producing Party along with an 8 digit number (e.g. ABC00000001);

        (5) the unused digits of the unique number shall be filled with placeholder zeros (0);

        (6) the number of digits in the numeric portion of the Production number format should not change in subsequent productions; and

        (7) if a production number or set of Production numbers is skipped, the skipped number or set of numbers will be noted.

    (b) Each file produced in Native Format shall be associated with a unique Document Number included on the TIFF placeholder provided with the native file.

17. <u>Organization of Production</u>.  Production of custodian and original file path information, where available, constitutes production in the usual course of business for electronic files.

18. <u>Family Relationships of Electronic Files</u>.  All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.  This does not impose any requirement on parties to associate and produce together hyperlinked documents.

19. <u>Dynamic Fields</u>.  Files containing dynamic fields such as file names, dates, and times will be produced showing the field type (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

20. <u>Compressed Files</u>.  Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

21. <u>Production Media</u>.  Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure FTP site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").  Productions are understood to be delivered when made available for download or when physically delivered on physical media. Each production will be labeled with the Production number range contained therein and a volume number, if appropriate. Each piece of Production Media shall include a unique identifying label and cover letter including the following information:

    (a)    name of the Litigation and its case number;

    (b)    name of the Producing Party;

    (c)    date of the production (mm/dd/yyyy);

    (d)    volume number (in alphanumeric format – i.e. ABC001);

    (e)    Production number range;

    (f)    confidentiality designation; and

    (g)    notes regarding any irregularities in the production (e.g., whether it is replacement Production Media).

    (h)    If a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.).

22. <u>Replacement Production Media</u>.  Any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Production number range(s) being replaced.

23. <u>Production via FTP Sites</u>.  Producing Parties may elect to produce initially via an FTP site for production volumes equal to or less than 20 GB on the due date of the production. Production volumes of a larger size than 20 GB may be produced by FTP in the process described above only upon prior agreement of the Requesting Parties.

24. <u>Encryption of Production Media</u>.  To maximize the security of information in transit, any media on which documents or electronic files are produced shall be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

25. <u>Time</u>.  When processing ESI, GMT should be selected as the time zone unless another time zone is agreed by the Parties.  When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy HH:mm AM/PM.

26. <u>Redactions</u>.  The Producing Party may redact, from any TIFF image, metadata field, and/or native file, information that is protected from disclosure by any applicable privilege or immunity law or regulation, including but not limited to information protected by attorney-client privilege, work product doctrine, joint defense work product doctrine, individually identifiable health information, personal identifying information, or confidential information (as defined in the Protective Order) that is otherwise non-responsive to a discovery request.  Each redaction shall be clearly labeled and include the reason for the redaction, such as "Redacted-Privileged," "Redacted-Private," or "Redacted-Non-Responsive" as appropriate.  The Producing Party shall preserve an unredacted version of the document.  Where a document contains both protected and non-protected responsive content, the Producing Party shall redact the protected material and produce the remainder of the document as redacted.  Confidential information, as defined in the Protective Order, may be redacted from a document only if the document can be redacted without obscuring otherwise responsive information.  The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.  No Party shall be required to produce a redaction log provided that the reason for the redaction appears on the redaction label (e.g. "Privilege," "Private").

27. <u>Non-Responsive Attachments</u>.  The Parties agree that fully non-responsive attachments to responsive parent documents need not be produced.  For such fully non-responsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship.  If any document in a document family is responsive, the parent document in the family shall be produced without regard to whether it is independently responsive.  The Parties will make relevancy and production determinations for hard copy documents at the document level.

28. <u>Structured Data Format</u>.  To the extent a response to discovery requires production of discoverable ESI contained in a database, the Producing Party may elect to produce the data in a report format if that format is reasonably usable or in a native format compatible with Microsoft Excel or Microsoft Access.

29. Source Code. Source code discovery shall be governed by the Protective Order submitted concurrently herewith.

30. Confidentiality of Produced ESI. Responsive ESI, whether produced as TIFF images or in Native Format, shall be produced pursuant to the terms of the Protective Order. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

31. TIFF Format Subject to a Claim of Protection. If the Producing Party is producing ESI in TIFF Format and seeks to designate such ESI as confidential under the Protective Order, or any agreement entered into or Order issued in this matter, corresponding designations such as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" shall be burned electronically on the lower left corner of each page of such document. The confidentiality designation shall not obscure, conceal or interfere with any information originally appearing on the document. The Producing Party should also include in the DAT file a designation that the document is protected and the level of protection, as required by the Protective Order or any agreement.

32. Native Format Subject to a Claim of Protection. If the Producing Party is producing ESI in Native Format and seeks to designate such ESI as confidential under the Protective Order, or any agreement entered into or Order issued in this matter, then the designation shall be included in the filename as well as the TIFF placeholder or where not produced with a TIFF placeholder, the storage device (*e.g.*, CD, USB, or hard drive) containing such native ESI data shall be labeled with the corresponding designations such as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - AEO". The Producing Party should also include in the flat file (.txt or .dat) a designation that the document is protected and the level of protection, as required by the Protective Order.

**V.   PRIVILEGE**

33. Protective Order. The terms of the Protective Order governing the production of privileged information govern this Order as well. Nothing in this Order, including any production of documents under the ESI protocol set forth herein, shall constitute a waiver by any Party for any purpose.

34. Waiver of Privilege Log Requirements. The parties agree to waive the requirements of Federal Rule of Civil Procedure 26(b)(5)(A) regarding the provision of a privilege log (or other information) regarding discoverable information withheld by the Producing Party based on a claim of privilege or protection as trial-preparation material except as ordered during the Court's October 21, 2025 discovery hearing.

35. Preservation of Privileged Materials. All privileged material should be preserved in the event of a later dispute with respect to the propriety of any privilege claim.

**VI.   OBJECTIONS**

36. Objections, Generally. The Parties do not waive any objections including but not limited to the relevance, responsiveness, production, discoverability, possession, custody,

control, or confidentiality of ESI and hard copy documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of document requests. Nothing in this Stipulated Order shall be interpreted to require the disclosure of irrelevant information, relevant information that is overly burdensome, or relevant information protected by the attorney-client privilege, work product immunity, or any other applicable privilege or immunity or is otherwise not discoverable.

37. <u>Variance</u>. Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court. Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure and the Local Civil Rules.

38. <u>No Waiver of Rights Regarding Review</u>. By entering this Order, a Party is not giving up its right to review its documents for privilege or any other reason (including to identify non-responsive documents) and the existence of this Order cannot be used to compel a Party to produce documents without review. Moreover, this Order does not mean that the cost of review should not be considered in whether any particular discovery is disproportionate (i.e., that the marginal benefit of the discovery does not warrant the cost of said discovery, including review).

39. <u>Disputes</u>. The Parties will meet and confer in an attempt to resolve any objections if necessary.

December 18, 2025

| **RUSS AUGUST & KABAT** | **NORTON ROSE FULBRIGHT US LLP** |
|---|---|
| By: <u>/s/ Joshua Scheufler</u> | By: <u>/s/ Richard S. Zembek</u> |
| Reza Mirzaie<br>CA State Bar No. 246953<br>Marc A. Fenster<br>CA State Bar No. 181067<br>Neil A. Rubin<br>CA State Bar No. 250761<br>Christian W. Conkle<br>CA State Bar No. 306374<br>Jonathan Ma<br>CA State Bar No. 312773<br>Joshua Scheufler<br>TX State Bar No. 24123406<br>RUSS AUGUST & KABAT<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, CA 90025<br>Telephone: 310-826-7474 | Richard S. Zembek<br>Texas State Bar No. 00797726<br>richard.zembek@nortonrosefulbright.com<br>Daniel S. Leventhal<br>Texas State Bar No. 24050923<br>Daniel.leventhal@nortonrosefulbright.com<br>1550 Lamar Street, Suite 2000<br>Houston, Texas 77010-4106<br>Tel: (713) 651-5151<br>Fax: (713) 651-5246<br><br>Eric C. Green<br>Texas State Bar No. 24069824<br>eric.green@nortonrosefulbright.com<br>Brett A. McKean<br>Texas State Bar No. 24057994 |

| | |
|---|---|
| Email: rmirzaie@raklaw.com<br>Email: mfenster@raklaw.com<br>Email: nrubin@raklaw.com<br>Email: cconkle@raklaw.com<br>Email: jma@raklaw.com<br>Email : jscheufler@raklaw.com<br>Qi (Peter) Tong<br>TX Bar No. 24119042<br>RUSS AUGUST & KABAT<br>8080 N. Central Expy., Suite 1503<br>Dallas, TX 75206<br>Telephone: 310-826-7474<br>Email: ptong@raklaw.com<br>Attorneys for Plaintiff Redstone Logics LLC<br><br>*Attorneys for Plaintiff Redstone Logics LLC* | Brett.mckean@nortonrosefulbright.com<br>98 San Jacinto Boulevard, Suite 1100<br>Austin, Texas 78701-4255<br>Tel: (512) 536-3094<br>Fax: (512) 536-4598<br><br>*Attorneys for Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc.* |

# ATTACHMENT A

I. **NON-DISCOVERABLE ESI**

1) deleted, slack, fragmented, unallocated, or other data accessible only by forensics;

2) random access memory (RAM), temporary files, or other ephemeral data;

3) on-line access data such as temporary internet files, histories, caches, cookies, etc.;

4) data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Order (the metadata fields identified in Attachment B);

5) dynamic fields of databases or log files that are not retained in the usual course of business;

6) server, system, network, or software application logs;

7) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

8) text messages, instant messages, and chat application data stored in company systems;

9) text messages, instant messages, chat application data, and other data stored on mobile devices;

10) voice mails, including telephone or VOIP voice messages;

11) automatically saved versions of documents and emails as temporary files;

12) data stored on photocopiers, scanners and fax machines;

13) logs of calls made from mobile devices;

14) personal computers and personal e-mail not regularly used for business activities;

15) social media sites;

16) data that is substantially duplicative of data that is more accessible elsewhere, such as backup data.

## ATTACHMENT B

I.  **DOCUMENT PRODUCTION FORMAT SPECIFICATIONS**

**1)** **Format**.  Produced documents will be provided as black and white, Group IV single page TIFF images, 300 DPI, named the same as the Production number (without an embedded spaces or special characters).  Where produced pursuant to Paragraph "Color," color images will be provided in jpg/jpeg format.

**2)** **Load File Specifications**.  In order to facilitate loading the images into document review software, a standard image load file indicating document boundaries and location of images will accompany the images.  The load file will be in a format that can be used as is or that can easily be modified to accommodate loading into any industry standard litigation support software system.

a)  The Opticon file format is recommended.  See example below:

| Document ID[2] | CD Name[3] | Path\Tiff Name[4] | DocBreak[5] | Document |
|---|---|---|---|---|
| ZTL00000001,ZTLCD001,D:\ZTLCD001\ZTL00000001\ZTL00000001.TIF,Y | | | | pg 1 of 1 pg |
| ZTL00000002,ZTLCD001,D:\ZTLCD001\ZTL00000002\ZTL00000002.TIF,Y | | | | pg 1 of 4 pg |
| ZTL00000003,ZTLCD001,D:\ZTLCD001\ZTL00000002\ZTL00000003.TIF, | | | | pg 2 of 4 pg |
| ZTL00000004,ZTLCD001,D:\ZTLCD001\ZTL00000002\ZTL00000004.TIF, | | | | pg 3 of 4 pg |
| ZTL00000005,ZTLCD001,D:\ZTLCD001\ZTL00000002\ZTL00000005.TIF, | | | | pg 4 of 4 pg |
| ZTL00000006,ZTLCD001.D:\ZTLCD001\ZTL00000003\ZTL00000006.TIF,Y | | | | pg 1 of 1 pg |
| | | | | |
| | | | | |

**3)** **OCR**.  Machine generated OCR created from scanned images or redacted documents will be provided at a document level.  There will be one OCR text (.txt) file per document, named the same as the beginning Production number (Document ID) of the document.  The OCR text file for a document will reside in a separate folder from the images for that document.  The OCR text file associated with any redacted document will exclude redacted text.

**4)** **Extracted Text**.  The extracted text taken from the native file will be provided at a document level.  There will be one extracted text file per document, named the same as the beginning Production number (Document ID) of the document.  The text file for a document will reside in a separate folder.  The extracted text file associated with any redacted document will be replaced with an OCR text file that excludes redacted text.

---

[2] Production number
[3] CD name
[4] Path and file name
[5] "Y" indicates first page

**5)** **Default Production Fields**. The following default fields will be provided for all documents in the production. In multi-value fields, multiple values in a single field should be separated by semi-colons (;).

| FIELD NAME | DESCRIPTION |
|---|---|
| BegProd | Beginning Production number of the file |
| EndProd | Ending Production number of the file |
| BegAttach | Beginning of the family group (i.e. the first page of the parent document. |
| EndAttach | End of the documents included in a family (i.e. the last page of the last attachment in the family) |
| Pages | Number of Tiff pages In a file |
| ProdVol | Name of the production volume |
| All Custodian(s) | Multi-value field for all custodians of a document.  This includes both employee custodians and non-custodial data sources.  All documents should have a custodian value present.  If multiple documents dedupe during processing, this field should be populated with all custodian values available. |

**6)** **Metadata Fields**. The following metadata fields will be exchanged to the extent such metadata is readily available.  Specific metadata associated with redacted documents may be withheld from the production if the metadata field is likely to contain privileged or protected information, subject to the Requesting Party's right to seek production.

| FIELD NAME | EMAIL OR NON-EMAIL | DESCRIPTION |
|---|---|---|
| Subject | Email | Subject Line of the Email |
| File Name | Non-Email | Name of the Application File |
| File Extension | Non-Email | File extension |
| Sent Date | Email | Email sent date. (MM/DD/YYYY  hh:mm:ss format). |
| Sent Time | Email | Email sent time |
| Received Date | Email | Email received date (MM/DD/YYYY  hh:mm:ss format). |
| Received Time | Email | Email received time |
| Created Date | Non-Email | Date Application File was created.  Note that Date Created may be subject to change during collection or processing as a result of auto date function or other processes. (MM/DD/YYYY  hh:mm:ss format). |
| Created Time | Non-Email | Time Application File was created |
| Modified Date | Non-Email | Date Application File was last modified (MM/DD/YYYY  hh:mm:ss format). |

14

| FIELD NAME | EMAIL OR NON-EMAIL | DESCRIPTION |
|---|---|---|
| Modified Time | Non-Email | Time Application File was last modified |
| Author | Both | Author of the Application File or Sender of the Email |
| To | Email | Recipients of the Email in the TO field |
| CC | Email | Recipients of the Email in the CC field |
| BCC | Email | Recipients of the Email in the BCC field |
| File Type | Both | Email, Spreadsheet, Word Processing Document, etc. |
| File Path | Both | Location of the file within the system |
| Document Type | Both | Type of file – Email, attachment, stand-alone |
| Confidentiality | Both | Text of confidentiality designation, if any |
| Email Message ID | Email | Unique identifier for email |
| Redacted | Both | Identified whether a document or email is redacted (Yes/No) |
| Redaction Reason | Both | Identifies the reason for a redaction |
| Native Link | Both | Native Link for File |
| Native File Name | Non-Email | Native files named after the Production number, e.g., E00001.xls (in contrast to File Name which is the original name of the file) |
| MD5 Hash | Non-Email | Value commonly used to de-duplicate files or identify duplicates |

a)      Metadata will be provided in a flat file (.txt or .dat).  Each line will begin with the fields Beg Bates and End Bates.  Default Concordance delimiters should be used, as follows:

i)      Field delimiter – ASCII character 20 (¶)

ii)     Text delimiter – ASCII character 254 (þ)

iii)    Newline indicator – ASCII character 174 (®)

**7)     Native Production Format**.  Native files will be produced only to the extent described in Paragraph 1 above, as the Parties may agree, or as the Court may order.  If native files are produced, their formatting will be as follows:

a)      Native files will be produced with a Bates stamped image indicating that the file was produced natively.

b)      Native files will be named the same as the beginning Production number (Document ID) as the Bates stamped image.

15

c)      Where documents are produced in native form, a full path to the native document must be included in a doclink field in the metadata.