# EXHIBIT 5

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY INFORMATION**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

| | |
|---|---|
| REDSTONE LOGICS LLC<br><br>*Plaintiff,*<br><br>v.<br><br>QUALCOMM INCORPORATED AND QUALCOMM TECHNOLOGIES, INC.,<br><br>*Defendants*. | Case No. 7:24-cv-00231-ADA<br><br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF'S SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-16)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Redstone, LLC ("Plaintiff" or "Redstone") submits the following Second Supplemental Objections and Responses to Defendants Qualcomm Incorporated and Qualcomm Technologies, Inc. ("Qualcomm" or "Defendants") First Set of Interrogatories (the "Interrogatories") as follows:

Redstone's responses are based on information known and available to it at the time of these responses. Redstone's investigation in this matter is ongoing. Further, because all information and documents that are possibly within the scope of the Interrogatories may have yet to be located and/or identified, the development of Redstone's contentions with respect to its claims and defenses is ongoing. Redstone reserves the right to assert additional objections to the Interrogatories and to modify and supplement its responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

Redstone's responses to these Interrogatories are not to be construed as admissions that any of the requested information exists or that any contention or assumption contained in the Interrogatories, whether implicit or explicit, is correct.

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

in the market before copying ARM's implementation of the invention. For example, as of 2013, Qualcomm dismissed "ARM's Big.little approach" claiming to have "a different idea."[6] Prior to the adoption of big.LITTLE, Qualcomm's chips used a dedicated voltage plane and clock frequency for each core, rather than for a set of cores.[7] But not even five years later, Qualcomm caved to market pressures to adopt the far more effective ARM big.LITTLE architecture.[8] Qualcomm concedes "[t]raditional frequency, voltage regulation and scaling of cores have gone a long way to improve power efficiency[, b]ut now having different types of cores at your disposal opens new possibilities for tuning power efficiency as demands change."[9] Qualcomm continued this copying by going on to use ARM's DynamIQ architecture.[10]

As showing in Redstone's infringement contentions and any supplement thereto, both ARM big.LITTLE and DynamIQ, as well as Qulacomm's gold and silver implementation, infringe. Redstone contends that Qualcomm's failure to develop a competitive architecture of its own and then copied an infringing one, further supports the non-obviousness of the asserted invention through at least copying and/or long-felt but unmet needs and the failure of others. Discovery in this case is ongoing, and Redstone reserves the right to amend or supplement this response as discovery in this case proceeds.

**INTERROGATORY NO. 10**

For the Asserted Patent, state all facts—including the identification of witnesses and any Documents—that support or refute Your damages claims against Defendants including, but not limited to all facts relevant to determining a reasonable royalty, the specific inputs relevant to determining any such royalty, facts Concerning whether and to what quantitative extent your proposed royalty base consists of revenues attributable to the Asserted Claims, facts Concerning

---

[6] https://www.eetimes.com/qualcomm-not-big-on-big-little/
[7] https://www.extremetech.com/computing/99721-how-snapdragon-s4-and-tegra-3-manage-arm-cores-differently
[8] https://www.qualcomm.com/news/onq/2018/02/impact-big-core-and-little-core-architecture-application-development
[9] *Id*.
[10] https://www.qualcomm.com/content/dam/qcomm-martech/dm-assets/documents/day2_perform_pillar_travis_lanier.pdf

26

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

the apportionment of the value of the Asserted Claims to the products You accuse of Infringing, and all facts relevant to each of the fifteen factors set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) or relevant to any purported enhancement of damages.

**RESPONSE TO INTERROGATORY NO. 10:**

Incorporating the General Objections, above, Redstone additionally objects to this interrogatory as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case. Redstone further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties. Redstone further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest doctrine and/or any other applicable privilege. Redstone further objects to this Interrogatory seeks to require Redstone to marshal all of its proof or any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter. Redstone objects to this Interrogatory as having numerous parts, which amounts to multiple Interrogatories. For example, this Interrogatory seeks identification of 1) all facts relevant to determining a reasonable royalty, 2) the specific inputs relevant to determining any such royalty, 3) facts Concerning whether and to what quantitative extent your proposed royalty base consists of revenues attributable to the Asserted Claims, 4) facts Concerning the apportionment of the value of the Asserted Claims to the products You accuse of Infringing, and 5) all facts relevant to each of the fifteen factors set out in *Georgia-Pacific*. Redstone further objects to this interrogatory as calling for legal conclusions and premature expert analysis. Redstone will respond to this interrogatory with an appropriate level of detail on its general damages theory. Redstone objects to this Interrogatory to the extent that it seeks information that is outside of Redstone's possession, custody, and control. Redstone objects to this interrogatory on the grounds that it prematurely seeks expert opinion.

27

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

Subject to and without waiving the foregoing objections, Redstone responds as follows:

Discovery is at its early stages and Defendants have not yet produced damages-related discovery, including documents, licenses, witnesses, financials, or benefits documents.  Redstone has not yet completed its investigation, collection of information, discovery, and analysis relating to these actions. Accordingly, Redstone expressly reserves the right to supplement, modify or alter its response hereto. Redstone reserves all of its rights and does not waive any proposed damages position by the submission of this disclosure. In addition, Redstone reserves the right to rely on any evidence produced by Defendants, including testimony and/or declarations of one or more fact or expert witnesses.

Redstone is willing to meet and confer regarding an agreed timeline for serving responses to certain contention interrogatories.

Discovery in this case is ongoing, and Redstone reserves the right to amend or supplement this response as discovery in this case proceeds.

**1st SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (02/02/26)**

Redstone incorporates its previous objections and responses to this Interrogatory. Subject to and without waiving the foregoing objections, Plaintiff further supplements its responses to this Interrogatory as follows:

Subject to and without waiving the foregoing objections, Redstone responds as follows: Redstone has not yet completed its investigation, collection of information, discovery, and analysis relating to this action. Accordingly, Redstone expressly reserves the right to supplement, modify or alter its response hereto. Redstone reserves all of its rights and does not waive any proposed damages position by the submission of this disclosure. In addition, Redstone reserves the right to rely on any evidence produced by Defendant, including testimony and/or declarations of one or

28

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

more fact or expert witnesses.

Based on the evidence of which Redstone is currently aware, Redstone is seeking monetary damages at least in the form of a reasonable royalty.

In the absence of expert opinion (which is premature at this time), Redstone has not determined which methodology or methodologies (including the hypothetical negotiation method described in *Georgia Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), the analytic method, the income method, the market method, etc., or some combination thereof) should be used in determining a reasonable royalty in this case, but as the *Georgia Pacific* factors encompass in some respects all of these methods, this response will reference the *Georgia Pacific* factors in discussing the determination of a reasonable royalty. At this time, Redstone expects the royalty base will include revenue generated from the accused products that results from United States infringement. This will include revenue of products sold in the United States. This also includes "design wins" of products Qualcomm, in the United States, works with customers to design and capture the sale in the United States. Worldwide sales from such design wins in the United States may be part of the royalty base. Redstone also seeks worldwide sales of products that are manufactured in the United States by Qualcomm and/or its contract manufacturers in the United States. Redstone also seeks sales of accused products sold abroad with knowledge and expectation that a portion of that product will be later be imported and/sold in the United States by its customers. Such worldwide sales of accused products include all products Qualcomm sells with the accused instrumentalities, e.g., big.LITTLE and/or DynamicIQ shared unit architecture (e.g., its mobile CPUs including those with Qualcomm's implementation- Gold and Silver cores) worldwide, not just those imported to the United States. Qualcomm is a U.S.-company that makes, uses, offers to sell, and/or sells the accused products from the United States. The royalty base

29

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

alternatively may consist of units of the foregoing.

Redstone expects the date and parties to the hypothetical negotiation in this case will be determined by the date of Defendant's first infringement, which is the subject of discovery not yet received from Defendant. Redstone will seek damages for the full extent of the damages period, from the date of first infringement (and no later than the date of first notice of the Asserted Patents or the filing of the Complaint, whichever is earlier) through patent expiration. Defendants first began to infringe with the first manufacture and offering for sale of the accused products, and Defendants' infringement is ongoing. At this time, based on currently available information, Redstone expects the damages period to date back to September 20, 2018. The conclusion of the damages period would be the date of the Asserted Patent's expiration. Redstone expects that evidence to be produced by Defendant will show the date for Defendant's first offer for sale of an Accused Product that includes Redstone's patented technology (and this evidence is still forthcoming). The evidence, including testimony by fact and expert witnesses, will be relevant to the determination of a fair royalty structure (e.g., lump sum, running royalty, etc.) to account for royalties for the entire damages period through patent expiration. Redstone expects a per-unit accounting and future royalties for all infringing sales through the expiration of the Asserted Patents. Redstone may be willing to accept an upfront, fully paid-up lump sum license fee in accordance to an agreed calculation of past and current sales together with estimated sales of infringing units through the end of the damages period, such as structuring a royalty payment as a lump sum calculated based on past sales together with projected sales through patent expiration, or, alternatively, with a lump sum calculated based on past sales, together with a running royalty on sales through patent expiration. Redstone may compute damages based, at least in part, on comparable agreements, but such agreements should take into account circumstances surrounding

30

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

the agreements, such as differences in importance and benefits of technology, whether or not an agreement is a litigation settlement, and possible group or bulk licensing discounts.  Particularly because the patent-in-suit provides technology at the core of the Accused Products' functionality and suitability as mobile processors, Redstone may rely on technology license agreements, such as those with ARM.  But Redstone may also consider that the patents-in-suit give broad freedom to operate compared to potentially more limited technology licenses. Redstone may rely on the incremental revenue, benefits, and/or profits attributable to functionality enabled by the patents-in-suit. Redstone expects to rely upon one or more expert analyses, including technical analyses of benefits, costs and non-infringing alternatives, if any. Redstone also expects to rely upon Defendant's financial costs, marketing/sales, and licensing discovery.

At this time, it is too early to determine whether Redstone will seek damages as to convoyed or collateral sales. Redstone requires additional discovery from Defendant in order to provide a fulsome response as to a precise computation of damages on convoyed and collateral sales in this case. The determination of the relevance of convoyed or collateral sales will depend on evidence produced by Defendant indicating the extent of additional features and services provided to customers together with the Accused Products. Redstone expects that the testimony of Defendant's fact or expert witnesses, and evidence relating to customer billing and purchasing activity, may establish the extent of convoyed or collateral sales. In general, convoyed and collateral sales may be relevant in a number of ways to a determination of a reasonable royalty, including by leading to a determination that a royalty rate needs to be higher to represent a reasonable royalty that accounts for the value of the convoyed and collateral sales. Fact and expert testimony will be relevant to the weight and relevance to be accorded to each convoyed or collateral sale.  At this time, it appears that convoyed and collateral sales may include SoC

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

functionality included on Accused Product dies, such as communications, Wi-Fi, cellular, co-processor, and other functionalities that Qualcomm packages with the accused CPUs.

Any contentions regarding a reasonable royalty at this stage of the litigation must necessarily be preliminary, both because the valuation of patent damages is an issue subject to expert analysis, and because conclusions regarding a reasonable royalty requires consideration of all, or at least a substantial portion, of the relevant evidence, and Redstone does not yet have access to all relevant evidence. The importance of expert analysis to the determination of a reasonable royalty is expressed, for example, in the fact that "[t]he opinion testimony of qualified experts" is expressly included in *Georgia Pacific* as Factor 14. 318 F. Supp. at 1120. An expert opinion on damages would be premature at this point because Defendants has to date produced very limited discovery of the evidence necessary to form such an opinion. As an example, Redstone has not yet conducted any depositions of witnesses with information relevant to the determination of damages. Redstone will also need to depose an individual knowledgeable about any sales documents or spreadsheets Defendants produces in this case, and any future sales data that Defendants produces, in order to ascertain the completeness of the documents and ensure that Redstone understands the information contained within them.

The importance of considering the relevant evidence as a whole in determining a reasonable royalty is reflected in the comprehensive nature of the Georgia Pacific Factors, which require a hypothetical negotiation in which the parties are privy to all relevant information extant at the time of the negotiation, and much information occurring thereafter. Moreover, the absence of evidence may be key to a damages analysis, and it is difficult to establish absence before the end of fact discovery. *See, e.g., ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) (evaluating reasonableness of reliance on settlement agreement based on the absence of

32

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

better evidence of a reasonable rate). Precise, final damages calculations will be subject to expert testimony and must await the complete disclosure and review of documents and other discovery from Defendant.

Discovery in this case is ongoing, and Redstone reserves the right to supplement or amend this response as discovery in this case proceeds.

**INTERROGATORY NO. 11**

Separately for each Asserted Claim, state whether that Asserted Claim provides a value or incremental improvement or benefit over the Prior Art, including the Prior Art cited in Defendants' operative invalidity contentions, Describing in detail any problem in the Prior Art solved by the invention embodied in that Asserted Claim, how that Asserted Claim solved that purported problem, and the benefits, if any, of practicing the Asserted Claim over the Prior Art, and identify the production number(s) of each document that You contend evidences, and the Person You contend is most knowledgeable about, the foregoing.

**RESPONSE TO INTERROGATORY NO. 11:**

Incorporating the General Objections, above, Redstone additionally objects to this interrogatory as overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case. Redstone further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege, work product doctrine, common interest doctrine and/or any other applicable privilege. Redstone further objects to this Interrogatory as calling for a legal conclusion. Redstone further objects to this Interrogatory as seeking premature expert opinions and to the extent that it seeks to require Redstone to prematurely marshal all of its proof or any proof it intends to rely on at any hearing, trial, submission to the Court, or deposition in this matter. Redstone further objects to this Interrogatory to the extent that it seeks information that is outside of Redstone's possession, custody, and control. Redstone further objects to this Interrogatory to the extent that it seeks information in Defendants' possession, custody or control, or that is equally accessible to Defendants from public sources or from third parties.

Subject to and without waiving the foregoing objections, Redstone responds as follows:

33

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

apc0 and apc1 feed into apss_cc_silver_pll and apss_cc_gold_pll respectively. *Id*. at 200. Redstone's infringement contentions cite to similar documents showing frequency plans and PLL arrangements for the various accused products. *See* Redstone's Infringement Contentions at 42.

Qualcomm's citation to QCREDSTONE_0039745 and QCREDSTONE_0121455 are inapposite. QCREDSTONE_0039745 does not provide that all PLL are directly supplied the same clock signal and to the extent it suggests such, it is contradicted by QCREDSTONE_0123173 as explained above. QCREDSTONE_0121455 likewise does not indicate that the Gold and Silver PLLs are provided with the same clock signal. Indeed, it merely provides a "supported configuration" that appears to suggest each are provided a different signal, apss_cc_gold_pll receiving 1382.40 and apss_cc_silver_pll receiving 1363.20. To the extent Qualcomm contends this demonstrates the Gold and Silver PLLs receive the same clock signal, this is contradicted by QCREDSTONE_0123173 as explained above.

Discovery in this case is ongoing, and Redstone reserves the right to amend or supplement this response as discovery in this case proceeds.

Dated: February 2, 2026

Respectfully submitted,

*/s/ Reza Mirzaie*
RUSS AUGUST & KABAT
Reza Mirzaie, SBN 246953
Email: rmirzaie@raklaw.com
Marc A. Fenster, SBN 181067
Email: mfenster@raklaw.com
Neil A. Rubin, SBN 250761
Email: nrubin@raklaw.com
Christian W. Conkle, SBN 306374
Email: cconkle@raklaw.com
Jonathan Ma, SBN 312773

44

**CONTAINS HIGHLY CONFIDENTIAL—ATTORNEYS EYES ONLY INFORMATION**

Email: jma@raklaw.com
Joshua Scheufler, SBN 330462
Email: jma@raklaw.com

12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Qi (Peter) Tong
TX SBN 24119042
Email: ptong@raklaw.com
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff Redstone Logics LLC*

45