# EXHIBIT 1

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,761 | 12/09/2025 | 8549339 | 0440101RX1 | 4243 |

25700    7590    03/06/2026

FARJAMI & FARJAMI LLP
26522 LA ALAMEDA AVENUE, SUITE 360
MISSION VIEJO, CA 92691

| EXAMINER |
|---|
| CAMPBELL, JOSHUA D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 03/06/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

DLA PIPER LLP US - Reston
ATTN: PATENT GROUP
11911 FREEDOM DR.
SUITE 300
RESTON, VA 20190

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,761* .

PATENT UNDER REEXAMINATION  *8549339* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| ***Order Granting Request For Ex Parte Reexamination*** | Control No. 90/015,761 | | Patent Under Reexamination 8549339 | |
|---|---|---|---|---|
| | Examiner JOSHUA D CAMPBELL | | Art Unit 3992 | AIA (FITF) Status No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>09 December 2025</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:    a)☐    PTO-892,    b)☑    PTO/SB/08,    c)☐    Other: _____

1. ☑    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /JOSHUA D CAMPBELL/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

Application/Control Number: 90/015,761                                                          Page 2
Art Unit: 3992

**Decision on Request**

1.        A substantial new question (SNQ) of patentability affecting claims 1-5, 8-11, 14, and 21 of

United States Patent Number 8,549,339 (hereinafter "the '339 Patent") is raised by the request for *ex*

*parte* reexamination filed December 9, 2025.

**Information Disclosure Statement**

2.        Where the IDS citations are submitted but not described, the examiner is only responsible for

cursorily reviewing the references. The initials of the examiner on the PTO-1449 indicate only that degree

of review unless the reference is either applied against the claims, or discussed by the examiner as

pertinent art of interest, in a subsequent office action.

          See Guidelines for Reexamination of Cases in View of In re Portola Packaging, Inc., 110 F.3d

786, 42 USPQ2d 1295 (Fed. Cir. 1997), 64 FR at 15347, 1223 Off. Gaz. Pat. Office at 125 (response to

comment 6).

          Consideration by the examiner of the information submitted in an IDS means that the examiner

will consider the documents in the same manner as other documents in Office search files are considered

by the examiner while conducting a search of the prior art in a proper field of search. The initials of the

examiner placed adjacent to the citations on the PTO-1449 or PTO/SB/08A and 08B or its equivalent

mean that the information has been considered by the examiner to the extent noted above.

          Regarding IDS submissions MPEP 2256 recites the following: "Where patents, publications, and

other such items of information are submitted by a party (patent owner) in compliance with the

requirements of the rules, the requisite degree of consideration to be given to such information will be

normally limited by the degree to which the party filing the information citation has explained the content

and relevance of the information."

Application/Control Number: 90/015,761                                                Page 3
Art Unit: 3992

**Prior art cited in the Request**

3.      The present request indicates that the Requester considers that a substantial new question of patentability is raised as to claims 1-5, 8-11, 14, and 21 of the '339 Patent by the following prior art references:

> a.      **White** – U.S. Patent No. 7,263,457
>
> b.      **Talwar** – U.S. Patent Application Publication No. 2009/0271646
>
> c.      **Boyle** – U.S. Patent No. 7,669,151
>
> d.      **Lee** – "Dynamic Voltage and Frequency Scaling (DVFS) Scheme for Multi-Domains Power Management"
>
> e.      **De Oliverira** – U.S. Patent Application Publication No. 2006/0152087
>
> f.      **Flautner** – U.S. Patent Application Publication No. 2005/0034002
>
> g.      **Kato** – U.S. Patent Application Publication No. 2004/0210738
>
> h.      **Vajda** – U.S. Patent Application Publication No. 2012/0060170

**Prosecution History**

4.      The '339 Patent application was assigned serial number 12/713,220 (hereinafter "the '220 application"), effectively filed February 26, 2010.  During the original prosecution, the '220 application initially included claims 1-20.  A preliminary amendment was filed on August 2, 2011 that added claims 21-23.

        In a non-final action mailed August 29, 2012, the previous examiner rejected claims 1, 5, 6, 8, 9, 14, and 21 in view of Jacobowitz et al.; claims 2-4, 7, 12, and 13 in view of Jacobowitz et al. and Kim et al.; and claims 10, 11, 15-20, 22, and 23 in view of Jacobowitz et al., Kim et al., and von Kaenel.  Claims 18-20 were also rejection under 35 U.S.C. 101 and claims 15-20 were also rejected under 35 U.S.C. 112, second paragraph.

Application/Control Number: 90/015,761                                                        Page 4
Art Unit: 3992

In response, the patent owner filed an amendment on November 29, 2012, amending claims 1, 10,

11, 15, and 18-23. The following amendments were made to the independent claims (using claim 1 as

example):

> 1.    (Currently Amended) A multi-core processor, comprising:
> a first set of processor cores of the multi-core processor, wherein each processor core
>        from the first set of processor cores is configured to dynamically receive a first
>        supply voltage and a first output clock signal of a first phase lock loop (PLL)
>        having a first clock signal as input;
> a second set of processor cores of the multi-core processor, wherein each processor
>        core from the second set of processor cores is configured to dynamically receive
>        a second supply voltage and a second output clock signal of a second PLL having
>        a second clock signal as input, wherein the first supply voltage is independent
>        from the second supply voltage, and the first clock signal is independent from the
>        second clock signal; and
> an interface block coupled to the first set of processor cores and also coupled to the
>        second set of processor cores, wherein the interface block is configured to
>        facilitate communication between the first set of processor cores and the second
>        set of processor cores.

Patent owner also presented the following arguments in view of the amendments.

> First, *Jacobowitz* fails to disclose or teach a first set of processor cores and second set
> of processor cores configured to dynamically receive a first supply voltage and a second supply
> voltage, respectively. In addition, the first supply voltage is independent from the second supply
> voltage, as required in the amended independent claims 1 and 21. Paragraph [0043] of
> *Jacobowitz* merely mentions that "[f]urther power management can be realized by controlling
> the power supply voltage (Vdd) to each core and/or chip." In other words, *Jacobowitz* is silent
> with respect to least the recited different sets of processor cores configured to receive
> independent supply voltages.
>
> Second, FIG. 6 and all other figures of *Jacobowitz* clearly show that the microprocessor
> chip (e.g., 600) receives a system reference oscillator clock frequency ($v_g$) and distributes $v_g$ to
> local oscillators 108. See *Jacobowitz*, paragraphs [0037]-[0038] and FIG. 6. *Jacobowitz* fails to
>
> disclose or teach a first set of processor cores and second set of processor cores configured to
> dynamically receive a first output clock signal of a first PLL having a first clock signal as input
> and a second output clock signal of a second PLL having a second clock signal as input,
> respectively. In addition, the first clock signal is independent from the second clock signal, as
> required in the amended independent claims 1 and 21.
> For at least the reasons set forth above, the amended independent claims 1 and 21 and
> the related dependent claims 2 – 14 and 22 – 23 are patentable over *Jacobowitz*. Applicant
> respectfully requests the withdrawal of the rejections under 35 U.S.C. §102.

(pages 9 and 10 of PO's response filed November 29, 2012 in the '220 application)

Application/Control Number: 90/015,761                                                                 Page 5
Art Unit: 3992

In response to the amendment, the application was passed to allowance in the Notice of Allowance mailed February 14, 2013. The examiner stated no reasons for allowance. Thus, as it currently stands based on the prosecution history of the '220 application, it appears that the claims of the '339 Patent were allowed at least in part based on the following limitations (using claim 1 as example:

*a first set of processor cores of the multi-core processor, wherein each processor core from the*

*first set of processor cores is configured to dynamically receive a first supply voltage and a*

*first output clock signal of a first phase lock loop (PLL) having a first clock signal as input;*

*a second set of processor cores of the multi-core processor, wherein each processor core from*

*the second set of processor cores is configured to dynamically receive a second supply*

*voltage and a second output clock signal of a second PLL having a second clock signal as*

*input, wherein the first supply voltage is independent from the second supply voltage, and the*

*first clock signal is independent from the second clock signal;*                     (patent claim 1)

Following the issuance of the '339 Patent, IPR2025-00085 was requested to challenge claims 1-6, 8-11, 14, and 21 of the '339 Patent based on the following grounds:

> **Ground 1:** Claims 1, 5, 8-10, 14, 21 – Knoth in view of Allarey
> **Ground 2:** Claims 2-4 – Knoth in view of Allarey and Flautner
> **Ground 3:** Claim 6 – Knoth in view of Allarey, Wolfe, and Kumar
> **Ground 4:** Claim 11 – Knoth in view of Allarey and Wolfe
> **Ground 5:** Claims 1-3, 5, 8-10, 14, 21 – Naffzinger in view of Allarey
> **Ground 6:** Claims 4 – Naffzinger in view of Allarey and Flautner
> **Ground 7:** Claim 6 – Naffzinger in view of Allarey, Wolfe, and Kumar
> **Ground 8:** Claim 11 – Naffzinger in view of Allarey and Wolfe

On April 22, 2025, the PTAB issued a decision to Denying Institution of *Inter Partes* Review based on a lack of demonstration of a reasonable likelihood to prevail by the petitioner.

IPR2025-00485 was also requested to challenge claims 1-3, 5, 8-11, 14, and 21 of the '339 Patent based on the following grounds:

> **Ground 1:** Claims 1-3, 5, 8, 10-11, 14, 21 – White in view of Talwar
> **Ground 2:** Claims 5, 14 – White in view of Talwar and Cho
> **Ground 3:** Claims 8, 9 – White in view of Talwar and Vajda
> **Ground 4:** Claims 1-3, 5, 8, 10-11, 14, 21 – Elgebaly in view of Ozer
> **Ground 5:** Claims 8, 9 – Elgebaly in view of Ozer and Vajda
> **Ground 6:** Claims 1-3, 5, 8, 10-11, 14, 21 – Elgebaly in view of Ozer and Williams

Application/Control Number: 90/015,761                                              Page 6
Art Unit: 3992

**Ground 7:** Claims 8, 9 – Elgebaly in view of Ozer, Williams, and Vajda

On July 10, 2025, a decision Denying Institution of the *Inter Partes* Review based on a request for

discretionary denial.

IPR2025-01532 was also requested to challenge claims 1-3, 5, 8-11, 14, and 21 of the '339 Patent

based on the following grounds:

**Ground 1:** Claims 1-3, 5, 8, 10-11, 14, 21 – White in view of Talwar and Lee
**Ground 2:** Claims 1-3, 5, 8, 10-11, 14, 21 – Elgebaly in view of Lee
**Ground 3:** Claim 9 – Elgebaly in view of Lee and Vajda

The PTAB has yet to issue a decision granting or denying institution of *Inter Partes* Review.

**Substantial New Question of Patentability**

5.       The italicized sections of claim 1 are utilized by the examiner to show how specific teachings of

the proposed references create a substantial new question of patentability.

1.       A multi-core processor, comprising:

*a first set of processor cores of the multi-core processor, wherein each processor core from*

*the first set of processor cores is configured to dynamically receive a first supply*

*voltage and a first output clock signal of a first phase lock loop (PLL) having a first*

*clock signal as input;*

*a second set of processor cores of the multi-core processor, wherein each processor core*

*from the second set of processor cores is configured to dynamically receive a second*

*supply voltage and a second output clock signal of a second PLL having a second clock*

*signal as input, wherein the first supply voltage is independent from the second supply*

*voltage, and the first clock signal is independent from the second clock signal;* and

an interface block coupled to the first set of processor cores and also coupled to the second

set of processor cores, wherein the interface block is configured to facilitate

communication between the first set of processor cores and the second set of processor

cores.

### White in view of Talwar and Boyle (SNQ 1)

6.     The Request shows that White in view Talwar and Boyle provide teachings relevant to the

determination of patentability regarding the following limitations, for claim 1:

*a first set of processor cores of the multi-core processor, wherein each processor core from the first*

*set of processor cores is configured to dynamically receive a first supply voltage and a first*

*output clock signal of a first phase lock loop (PLL) having a first clock signal as input;*

White discloses a multi-core integrated circuit which allows for any number of logic

cores being configured to operate at independent voltages and/or frequencies (column 2, lines

15-44 and column 6, lines 56-67 of White).  Additionally, White discloses multi-core

integrated circuits may be configured to operate and frequencies and/or voltages from other

multi-core integrated circuits (column 8, lines 41-58 of White).

Talwar discloses a multi-core processor design in which the cores and voltage

sources are divided into clusters, where each cluster receives power for a single voltage

source and may have a different cluster frequency (paragraphs [0011], [0018] and [0019] of

Talwar).

Boyle discloses integrated circuits that are organized into various clock domains (Fig.

9; column 2, lines 54-61; and column 9, lines 61-67 of Boyle).

*a second set of processor cores of the multi-core processor, wherein each processor core from the*

*second set of processor cores is configured to dynamically receive a second supply voltage and a*

*second output clock signal of a second PLL having a second clock signal as input, wherein the*

*first supply voltage is independent from the second supply voltage, and the first clock signal is*

*independent from the second clock signal;*

Application/Control Number: 90/015,761                                                    Page 8
Art Unit: 3992

White discloses a multi-core integrated circuit which allows for any number of logic cores being configured to operate at independent voltages and/or frequencies (column 2, lines 15-44 and column 6, lines 56-67 of White). Additionally, White discloses multi-core integrated circuits may be configured to operate and frequencies and/or voltages from other multi-core integrated circuits (column 8, lines 41-58 of White).

Talwar discloses a multi-core processor design in which the cores and voltage sources are divided into clusters, where each cluster receives power for a single voltage source and may have a different cluster frequency (paragraphs [0011], [0018] and [0019] of Talwar).

Boyle discloses integrated circuits that are organized into various clock domains (Fig. 9; column 2, lines 54-61; and column 9, lines 61-67 of Boyle). Boyle discloses the clock domains are clocked using independent clock sources (column 10, lines 15-20 of Boyle).

The White, Talwar, and Boyle references were not previously discussed by the previous examiner nor applied to claims 1-5, 8-11, 14, and 21 in the prior examination of the '339 patent. Additionally, while the White and Talwar references are present in the IPR proceedings discussed above, claims 1-3, 5, 8, 10, and 21 were not subject to any Final Written Decision in view of the combination of White and Talwar in said IPR proceedings.

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability that is based exclusively on that old art. See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based. Determinations on whether a substantial new question of patentability exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a substantial new question of patentability may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier

Application/Control Number: 90/015,761                                                                          Page 9
Art Unit: 3992

examination(s), in view of a material new argument or interpretation presented in the request. Such

material new argument or interpretation may be based solely on claim scope of the patent being

reexamined (see: MPEP 2242(II)(A)).

The White and Talwar references were cited in the previously filed IPR proceedings, however the

current presentation of the combination of these references with the Boyle reference is in a new light (see

MPEP 2216).

It is agreed that White in view of Talwar and Boyle raises a substantial new question of

patentability with respect to at least independent claims 1 and 21 of the '339 Patent. There is a substantial

likelihood that an examiner would consider these new, non-cumulative technological teachings important

in deciding whether or not these claims are patentable.

Accordingly, White in view of Talwar and Boyle raises a substantial new question of

patentability with respect to at least claims 1-3, 5, 8, 10, and 21 of the '339 Patent, a question which has

not been decided in a previous examination of the '339 Patent nor was there a final holding of invalidity

by the Federal Courts regarding the '339 Patent.

**White in view of Talwar and Lee (SNQ 2)**

7.      The Request shows that White in view Talwar and Lee provide teachings relevant to the

determination of patentability regarding the following limitations, for claim 1:

*a first set of processor cores of the multi-core processor, wherein each processor core from the first*

*set of processor cores is configured to dynamically receive a first supply voltage and a first*

*output clock signal of a first phase lock loop (PLL) having a first clock signal as input;*

White discloses the reception of location-dependent incident information such as an

emergency or hazard (column 7, lines 53-65; column 8, lines 12-21; and column 10, line 50-

column 11, line 8 of Franco)

Application/Control Number: 90/015,761                                          Page 10
Art Unit: 3992

    Janke discloses a vehicle occupant's ability to inform the server of any discrepancies between what is actually present and what the map indicates is present, including modifying or deleting the description of the event (column 4, lines 35-54 of Janke).

*a second set of processor cores of the multi-core processor, wherein each processor core from the second set of processor cores is configured to dynamically receive a second supply voltage and a second output clock signal of a second PLL having a second clock signal as input, wherein the first supply voltage is independent from the second supply voltage, and the first clock signal is independent from the second clock signal;*

    Franco discloses a display interface of a mobile phone that is configured to present incident alerts if the computed score for said event exceeds a threshold level (column 9, line 45-column 10, line 24 of Franco)

    The White, Talwar, and Lee references were not previously discussed by the previous examiner nor applied to claims 1-5, 8-11, 14, and 21 in the prior examination of the '339 patent.   Additionally, while the White, Talwar, and Lee references are present in the IPR proceedings discussed above, claims 1-3, 5, 8, 10, and 21 were not subject to any Final Written Decision in view of the combination of White, Talwar, and Lee in said IPR proceedings.

    It is agreed that White in view of Talwar and Lee raises a substantial new question of patentability with respect to at least independent claims 1 and 21 of the '339 Patent.  There is a substantial likelihood that an examiner would consider these new, non-cumulative technological teachings important in deciding whether or not these claims are patentable.

    Accordingly, White in view of Talwar and Lee raises a substantial new question of patentability with respect to at least claims 1-3, 5, 8, 10, and 21 of the '339 Patent, a question which has not been decided in a previous examination of the '339 Patent nor was there a final holding of invalidity by the Federal Courts regarding the '339 Patent.

Application/Control Number: 90/015,761                                                    Page 11
Art Unit: 3992

### White in view of Talwar, Boyle, and De Oliverira (SNQ 3)

8.      The De Oliverira reference has been cited in combination with the White, Talwar, and Boyle references in the Request as part of the asserted SNQ.  As stated above, White in view of Talwar and Boyle was not previously discussed by the examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of the '339 patent.  Additionally, the De Oliverira reference was also not previously discussed by the previous examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of the '339 Patent.  The De Oliverira reference in combination with the White, Talwar, and Boyle references raises an SNQ at least based on the discussion found of above regarding White in view of Talwar and Boyle (SNQ 1).  The Request shows that the combination of White in view of Talwar and Boyle provide teachings that are relevant to the limitations noted above which may have been material in determining the patentability of the '339 Patent claims at the time of allowance.

It is agreed that the consideration of De Oliverira with White, Talwar, and Boyle raises an SNQ with respect to at least independent claims 1 and 21 of the '339 Patent based on the teachings of White, Talwar, and Boyle cited above.  There is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of the De Oliverira reference with the White, Talwar, and Boyle references raises a substantial new question of patentability with respect to at least claims 1-5, 8-11, 14, and 21 of the '339 Patent, a question which has not been decided in a previous examination.  In addition, there has been no final holding of invalidity by the Federal Courts regarding the '339 Patent.

### White in view of Talwar, Boyle, and Flautner (SNQ 4)

9.      The Flautner reference has been cited in combination with the White, Talwar, and Boyle references in the Request as part of the asserted SNQ.  As stated above, White in view of Talwar and Boyle was not previously discussed by the examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of the '339 patent.  Additionally, the Flautner reference was also not previously

Application/Control Number: 90/015,761                                                                Page 12
Art Unit: 3992

discussed by the previous examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of

the '339 Patent.  Additionally, while the Flautner references are present in the IPR proceedings discussed

above, claims 1-3, 5, 8, 10, and 21 were not subject to any Final Written Decision in view of the

combination of White, Talwar, and Flautner in said IPR proceedings.  The Flautner reference in

combination with the White, Talwar, and Boyle references raises an SNQ at least based on the discussion

found of above regarding White in view of Talwar and Boyle (SNQ 1).  The Request shows that the

combination of White in view of Talwar and Boyle provide teachings that are relevant to the limitations

noted above which may have been material in determining the patentability of the '339 Patent claims at

the time of allowance.

It is agreed that the consideration of Flautner with White, Talwar, and Boyle raises an SNQ with

respect to at least independent claims 1 and 21 of the '339 Patent based on the teachings of White,

Talwar, and Boyle cited above.  There is a substantial likelihood that a reasonable examiner would

consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of the Flautner reference with the White, Talwar, and Boyle

references raises a substantial new question of patentability with respect to at least claims 1-5, 8-11, 14,

and 21 of the '339 Patent, a question which has not been decided in a previous examination.  In addition,

there has been no final holding of invalidity by the Federal Courts regarding the '339 Patent.


**White in view of Talwar, Boyle, and Kato (SNQ 5)**

10.      The Kato reference has been cited in combination with the White, Talwar, and Boyle references

in the Request as part of the asserted SNQ.  As stated above, White in view of Talwar and Boyle was not

previously discussed by the examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination

of the '339 patent.  Additionally, the Kato reference was also not previously discussed by the previous

examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of the '339 Patent.  The

Kato reference in combination with the White, Talwar, and Boyle references raises an SNQ at least based

Application/Control Number: 90/015,761                                                  Page 13
Art Unit: 3992

on the discussion found of above regarding White in view of Talwar and Boyle (SNQ 1). The Request

shows that the combination of White in view of Talwar and Boyle provide teachings that are relevant to

the limitations noted above which may have been material in determining the patentability of the '339

Patent claims at the time of allowance.

It is agreed that the consideration of Kato with White, Talwar, and Boyle raises an SNQ with

respect to at least independent claims 1 and 21 of the '339 Patent based on the teachings of White,

Talwar, and Boyle cited above. There is a substantial likelihood that a reasonable examiner would

consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of the Kato reference with the White, Talwar, and Boyle references

raises a substantial new question of patentability with respect to at least claims 1-5, 8-11, 14, and 21 of

the '339 Patent, a question which has not been decided in a previous examination. In addition, there has

been no final holding of invalidity by the Federal Courts regarding the '339 Patent.

**White in view of Talwar, Boyle, and Vajda (SNQ 6)**

11.      The Vajda reference has been cited in combination with the White, Talwar, and Boyle references

in the Request as part of the asserted SNQ. As stated above, White in view of Talwar and Boyle was not

previously discussed by the examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination

of the '339 patent. Additionally, the Vajda reference was also not previously discussed by the previous

examiner nor applied to claims 1-5, 8-11, and 14-21 in the prior examination of the '339 Patent.

Additionally, while the Vajda references are present in the IPR proceedings discussed above, claims 1-3,

5, 8, 10, and 21 were not subject to any Final Written Decision in view of the combination of White,

Talwar, and Vajda in said IPR proceedings. The Vajda reference in combination with the White, Talwar,

and Boyle references raises an SNQ at least based on the discussion found of above regarding White in

view of Talwar and Boyle (SNQ 1). The Request shows that the combination of White in view of Talwar

Application/Control Number: 90/015,761                                          Page 14
Art Unit: 3992

and Boyle provide teachings that are relevant to the limitations noted above which may have been material in determining the patentability of the '339 Patent claims at the time of allowance.

It is agreed that the consideration of Vajda with White, Talwar, and Boyle raises an SNQ with respect to at least independent claims 1 and 21 of the '339 Patent based on the teachings of White, Talwar, and Boyle cited above. There is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether or not these claims are patentable.

Accordingly, the combination of the Vajda reference with the White, Talwar, and Boyle references raises a substantial new question of patentability with respect to at least claims 1-5, 8-11, 14, and 21 of the '339 Patent, a question which has not been decided in a previous examination. In addition, there has been no final holding of invalidity by the Federal Courts regarding the '339 Patent.


**35 U.S.C. § 325(d)**

Section 325(d) states in part, "[i]n determining whether to institute or order a proceeding under this chapter, chapter 30, or chapter 31, the Director may take into account whether, and reject the petition or request because, the same or substantially the same prior art or arguments previously were presented to the Office." Thus, for the Director to exercise discretion as to whether to Order a reexamination under chapter 30, the Request must first be determined to be based on the same or substantially the same prior art or arguments that were previously presented to the Office.

A review of the post-grant history of the '339 patent indicates three post-grant challenges filed prior to the filing of the current Request: IPR2025-00085, IPR2025-00485, and IPR2025-01532

*IPR2025-00085*

On Oct. 22, 2024, Petitioners, MediaTek, Inc. and MediaTek USA, Inc., filed a Petition for *inter partes* review with the Patent Trial and Appeal Board ("Board"). In that Petition, eight grounds were asserted by Petitioner as raising a reasonable likelihood of prevailing that the challenged claims of the '339 patent are invalid over the cited prior art. On April 22, 2025, the Board concluded that Petitioner did not show a reasonable likelihood of prevailing on the merits over three of the cited prior art references

(Knoth[1], Allarey[2], and Naffziger[3]) as to claims 1 and 21 presented in the Petition. As a result, the Board

denied the Petition and trial was not instituted.

### IPR2025-00485

On Jan. 22, 2025, Petitioners, NXP USA, Inc. and Qualcomm Incorporated, filed a Petition for

*inter partes* review with the Board. In that Petition, seven grounds were asserted by Petitioner as raising a

reasonable likelihood of prevailing that the challenged claims of the '339 patent are invalid over the cited

prior art. On July 10, 2025, the Acting Director for the U.S. Patent & Trademark Office discretionarily

denied the Petition under 35 U.S.C. § 314(a) and trial was not instituted. The merits of the Petition were

not discussed or analyzed.

### IPR2025-01532

On Sept. 16, 2025, Petitioner, Apple Inc., filed a Petition for *inter partes* review with the Board.

In that Petition, three grounds were asserted by Petitioner as raising a reasonable likelihood of prevailing

that the challenged claims of the '339 patent are invalid over the cited prior art. On Jan. 27, 2026, the

Director of the U.S. Patent & Trademark Office discretionarily denied the Petition under 35 U.S.C. §

314(a) and trial was not instituted. The merits of the Petition were not discussed or analyzed.

### Current Reexamination No. 90/015,761

As noted above, on Dec. 9, 2025, Third-Party Requester, Advanced Micro Devices, Inc., filed the

current Request challenging claims 1-5, 8-11, 14, and 21 of the '339 patent over six grounds argued to

raise SNQs. These SNQs are summarized above in this Order.

### 325(d) Analysis

A comparison between the prior art and arguments cited in the prior IPR Petitions and the current

Request shows no identical or overlapping grounds. Despite this, it is noted that White, Talwar, Lee,

Flautner, and Vajda are common references cited in the current Request and various ones of the prior IPR

---

[1] U.S. Patent Application Publication No. 2009/0158078 A1, to Matthias Knoth ("Knoth").
[2] U.S. Patent No. 8,122,270 B2, to Allarey et al. ("Allarey").
[3] U.S. Patent Application Publication No. 2010/0122101 A1, to Naffziger et al. ("Naffziger").

Application/Control Number: 90/015,761                                                    Page 16
Art Unit: 3992

Petitions. However, the current Request also cites Boyle, De Oliverira, and Kato in various combinations with White, Talwar, Lee, Flautner, and Vajda. None of Boyle, De Oliverira, or Kato were cited in the previous IPR Petitions. This means that the combinations presented in the current Request are not identical to any of the presented grounds in the previous IPR Petitions because of the newly cited prior art. Additionally, because of the newly cited prior art and their respective newly presented combinations, the current Request also presents new and additional arguments that were not presented in the previous IPR Petitions. In other words, the prior art and arguments presented in the current Request are not the same or substantially the same as the prior art or arguments presented in the prior proceedings. Moreover, the Third-Party Requester in this proceeding is not the same as any of the Petitioners in the prior IPR proceedings, thus, there is no abusive filings practices against the '339 patent evident by the Third-Party Requester.

As a result, the statutory threshold under 35 U.S.C. § 325(d) for the Director to exercise discretion in deciding whether or not to Order reexamination based on the current Request is not met. Accordingly, in view of the discussion above, the current Request for *ex parte* reexamination is Ordered for the '339 patent based on the determination that the current Request has been determined to raise a substantial new question of patentability (SNQ) of the challenged claims.

**Scope of Reexamination**

12.      Claims 1-5, 8-11, 14, and 21 will be reexamined as requested.

*Conclusion*

13.      Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

Application/Control Number: 90/015,761 Page 17
Art Unit: 3992

14. The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 8,549,339 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

15. **All** correspondence relating to this *ex parte* reexamination proceeding should be directed:

Electronically: Registered users may submit via Patent Center at https://patentcenter.uspto.gov/.

By Mail to:       Mail Stop *Ex Parte* Reexam
                  Central Reexamination Unit
                  Commissioner for Patents
                  United States Patent & Trademark Office
                  P.O. Box 1450
                  Alexandria, VA 22313-1450

By FAX to:        (571) 273-9900
                  Central Reexamination Unit

By hand:          Customer Service Window
                  Knox Building
                  501 Dulany Street
                  Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4) , and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning this communication should be directed to Joshua Campbell at telephone number (571) 272-4133.

Application/Control Number: 90/015,761                                                    Page 18
Art Unit: 3992

/JOSHUA D CAMPBELL/
Primary Examiner, Art Unit 3992


Conferee:


/ALEXANDER J KOSOWSKI/
Supervisory Patent Examiner, Art Unit 3992